THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
D'ARTHAGAN SARGENT, Defendant-Appellee.

First District (4th Division)   No. 83—2852

Opinion filed December 19, 1985.—Rehearing denied January 22, 1986.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and John L. Malevitis, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

The State appeals from two orders of the circuit court of Cook County quashing the arrest of defendant, D'Arthagan Sargent, and suppressing a confession made by him after his arrest.

We reverse and remand.

The following pertinent evidence was adduced at the hearing on the motion to quash defendant's arrest. On October 3, 1982, the body of Rhonda Barns was discovered in her apartment by her sister, Donna Johnson. The victim had been killed by a single-edged razor. The following day, October 4, Donna informed the police that D'Ar-

thagan Sargent, who had known her sister for about one year, had come to Rhonda's apartment three weeks before her death, at about 11 p.m. Rhonda had told Donna that Sargent's behavior then was unusual. When he arrived, he began to look around in the refrigerator. Rhonda told him to stop and ordered him to leave the apartment. However, he did not immediately leave. Donna described Sargent, later identified as defendant, as a black man, aged 32 to 34, weighing 145 to 150 pounds, between five feet six inches and five feet eight inches in height, with a muscular build and a mustache. Defendant had told Donna that he had been released from prison in 1980.

Detective Thomas Tansey testified that he was one of the police detectives assigned to investigate the murder of Rhonda Barns. He was also investigating an armed robbery that had occurred in Rhonda's apartment building on August 11, 1982. The robber was described as a dark-skinned black man, about 25 to 30 years old, five feet three inches in height, with a beard, and weighing 160 to 170 pounds. He was wearing a light blue shirt, dark pants, and gym shoes. The weapon used in that robbery was also a single-edged razor.

Detective Tansey learned that on October 3, at about 11 p.m., a black male was seen attempting to peel off the coroner's seal from the victim's apartment door. The witness to this tampering, Alice Love, had described the man as in his mid thirties, medium complexioned, and close to six feet in height with a medium build. He wore a long black trench coat, black pants, black gloves, white gym shoes, and may have had a mustache.

Another witness, Yvette Pitts, saw a black male in similar clothing that morning in the building. He was dark complexioned with a mustache, in his late twenties or early thirties, and wore his hair in a short Afro style. His clothing consisted of a black trench coat, black pants, leather gloves, and white gym shoes.

Defendant was contacted by the police at his workplace on November 7, 1982. Defendant testified at the hearing that the police told him Rhonda Barns was dead and asked him to come to the police station and help with the investigation. Defendant agreed to cooperate, subsequently telling the police that he would help in any way he could. Detective Tansey and several other detectives then went to defendant's place of employment and spoke with him. The accounts of defendant and Tansey differ as to whether defendant initially was reluctant to immediately leave work and go to the station. (Defendant said he initially was reluctant; Tansey denied this.) However, it is undisputed that defendant ultimately agreed to accompany the police to the station to aid them in their investigation.

According to Detective Tansey, defendant told him at the station that he had known and dated Rhonda Barns, but he had not seen her since the spring of 1982. This was contrary to what Rhonda had told her sister about defendant having acted strangely at her apartment three weeks prior to her death on or about October 3, 1982.

Defendant agreed to take a polygraph test. (The trial court found the results of that examination to be irrelevant to the issue of probable cause.) At about 10 p.m., Detective Tansey made out a report for the arrest of defendant. Tansey also testified that during the preparation of the report, defendant was being held in an interview room and would not have been free to leave had he attempted to do so. Defendant was held there until approximately 2 a.m. when he was placed in the lockup. Sometime that evening after the arrest report was completed, the police located the victim of the armed robbery and showed her a lineup which included defendant. She indicated that defendant's physical characteristics were similar to those of the man who robbed her, but she could not positively identify defendant as that man.

The following day, defendant signed consent forms authorizing the taking of blood, hair, and saliva samples. He later gave oral and written confessions to the murder of Rhonda Barns. He subsequently consented, in writing, to a search of his home. That search uncovered certain incriminating evidence, including a single-edged razor and blood-stained shoes.

The trial court found that although defendant voluntarily came to the police station, he was arrested at about 10 p.m. when the arrest report was written and he was held in the interrogation room. The court found that the police lacked probable cause for the arrest and, thus, granted defendant's motion to quash the arrest. Another evidentiary hearing then followed concerning the post-arrest circumstances leading to defendant's confession and his various signed consents. The court granted defendant's motion to suppress those confessions and the physical evidence obtained as the result of the written consents. The court found that defendant had not been coerced and had been given proper *Miranda* warnings. (*Miranda v. Arizona* (1960), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) However, the court also found no circumstances sufficient to attenuate the taint of the illegal arrest.

■■ Probable cause to make an arrest exists when the information known to the arresting officer would suffice to warrant a person of reasonable caution in believing that the person arrested has committed an offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) Thus, even though any particular item of information known to

the police might not suffice to establish probable cause, the test is whether all of the information, considered together, reasonably supports the officer's belief that a suspect has committed a crime. *People v. Sanchez* (1982), 107 Ill. App. 3d 240, 437 N.E.2d 744.

█ In this case at the time of the defendant's arrest, the police knew the following: defendant knew the victim, and after behaving oddly, in a late-night visit three weeks prior to her death, she had ordered him to leave her apartment; the defendant lied to police about his last encounter with her, claiming not to have seen her since the spring, when her sister's account placed him there in September; two months before the murder, which was committed with a single-edged razor, an armed robbery was committed at the victim's apartment building by a man using the same type of weapon. Then, on the morning the victim's body was discovered and again that evening, a man was seen in the vicinity of the door to the victim's apartment. In the latter instance, the man was tampering with the coroner's seal on the victim's apartment door. The witnesses to each of these events gave descriptions which, albeit, with some discrepancies, generally matched the description of defendant furnished the police by the victim's sister.

The trial court discounted the descriptions given by the witnesses, erroneously noting that the witness to the tampering incident had failed to identify defendant in a lineup. In fact, in that lineup, which occurred after the arrest, it was the robbery victim who could not positively identify defendant, although she indicated his physical characteristics were similar to those of the armed robber.

Given all these circumstances, we conclude that the police did have probable cause to arrest defendant. Accordingly, we reverse the trial court's order quashing the arrest as well as the court's order suppressing the confession and other evidence which it found was obtained as a result of that arrest.

The orders of the trial court are reversed and the cause is remanded for further proceedings.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.