THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOZSEF FERCSI, Defendant-Appellant.

First District (5th Division)   No. 1—86—3592

Opinion filed March 31, 1989.

14

Randolph N. Stone, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Initially, defendant Jozsef Fercsi appealed his jury conviction of murder on the ground that he was improperly sentenced to 30 years' imprisonment when the trial court allegedly considered èvidence establishing his intent to kill as a sentencing factor. While the appeal was pending, the Illinois Supreme Court filed an opinion in *People v. Reddick* (1988), 123 Ill. 2d 184, after which both defendant and the State filed supplemental briefs. Relying on *Reddick,* defendant now argues that he is entitled to a new trial because the trial court erroneously instructed the jury as to the burden of proof related to voluntary manslaughter.

The facts underlying this case need only be mentioned briefly. In September 1985, defendant, Robert Flowers, and Tiberiu Paretei, all of whom lived in the same rooming house, were drinking together in Flowers' room. After Flowers displayed a photograph of his daughter, Tiberiu made sexually orientated remarks about the daughter. Defendant insisted that Tiberiu apologize. After about a half-hour of argument in English and Hungarian between defendant and Tiberiu, Tiberiu eventually apologized. Flowers then left the room and returned to find defendant standing over Tiberiu, who was lying on the floor; defendant was hitting him in the head with a hammer. Defendant claimed that he went to his own room after Flowers left the room. Tiberiu followed him and kicked in his door, whereupon defendant hit the victim with a pipe and then got a hammer and hit him several more times. Investigating officers stated that defendant's door

showed no signs of damage, but that there was blood in the hallway leading to Flowers' room, where the victim was found. Defendant also stated that he had seen Tiberiu "cut" another man prior to these events and that Tiberiu had pulled a knife on defendant about a year earlier.

In addition to a murder instruction and at defendant's request, the jury was also instructed on voluntary manslaughter based on an unreasonable belief that defendant's actions were justified. After receiving the Illinois Pattern Jury Instructions (IPI) on these crimes, the jury found defendant guilty of murder.

We must reverse and remand for a new trial.

■■ In *People v. Reddick* (1988), 123 Ill. 2d 184, the court held that it was grave error to give IPI Criminal, No. 7.02 (2d ed. 1981) (hereinafter IPI Criminal 2d) (murder) in tandem with IPI Criminal 2d No. 7.04 (voluntary manslaughter—provocation) and/or IPI Criminal 2d No. 7.06 (voluntary manslaughter—belief of justification). The error occurs because the voluntary manslaughter instruction in conjunction with the murder instruction fails to inform the jury that the State bears the burden of disproving the mitigating mental states necessary to reduce a murder charge to manslaughter. According to the *Reddick* court, such a combination of instructions, if followed by a jury, elimi-. nates the possibility of a defendant being convicted of voluntary manslaughter since the only way a mitigating mental state can be proved is by the defendant, rather than by the State. (*Reddick,* 123 Ill. 2d at 194-95.) Since this is precisely the situation here, defendant's conviction must be reversed.

The State concedes that the present law is as enunciated by *Reddick* but that it is inapplicable to our case because (1) defendant waived or is estopped from now raising the instructions issue since he tendered the voluntary manslaughter instruction, and (2) the *Reddick* decision should not be applied retroactively. We disagree as to both arguments.

■■ There are several reasons for dismissing the State's first argument. The *Reddick* opinion involved two consolidated appeals. The defendant in one of them did not challenge the instructions, even on appeal; however, the court considered the issue, even though not raised, because of the gravity of the error involved, *i.e.,* denial of a fair trial. We also note that defendant in the present case was convicted approximately 1½ years before *Reddick* was decided (June 20, 1988). Therefore, at the time he proffered the IPI voluntary manslaughter instruction, there was no way he could know that 18 months later the supreme court would find the instruction improper

when given with the IPI murder instruction. The very basis of waiver in American jurisprudence is the giving up of a *known* right. (*People v. Johnson* (1979), 75 Ill. 2d 180.) Defendant did not know of the right and, thus, could not waive it.

We must also dismiss the State's contention that *Reddick* should not be applied retroactively. It argues that retroactive application conflicts with decisions in *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (burden of proof regarding murder and manslaughter is matter of statutory interpretation, not constitutional law), and *Engle v. Isaac* (1982), 456 U.S. 107, 71 L. Ed. 2d 783, 102 S. Ct. 1558 (constitutional for defendant to bear burden of proof regarding mitigation needed to reduce murder to manslaughter). The State also points out that in *Engle,* it was held that changes in State case law relating to the burden of proof in murder cases need not be applied retroactively, at least when a defendant failed to raise the issue at the trial level.

■ However, we note that *Patterson* merely held that a State legislature *may* choose to require a defendant to establish the required mitigating circumstances in order to reduce murder to manslaughter. (*Engle* was in accord with *Patterson* on this issue.) The Illinois legislature has subsequently placed the burden of proof for mitigating mental states on the defendant, but only in cases involving homicides occurring after December 31, 1986. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) But at the time defendant was convicted, the burden of proof was on the State. (See *Reddick,* 123 Ill. 2d at 195-97; Ill. Rev. Stat. 1985, ch. 38, par. 3—2.) Therefore, under the law in existence then, the State was required to prove the absence of an unreasonable belief of justification by defendant, in addition to proving all the elements of murder, in order to obtain a murder conviction. However, the instructions informed the jury that it could render a finding of murder without even considering the mitigation evidence.

■ All of this discussion leads us to agree with the opinion expressed in *People v. Brooks* (1988), 175 Ill. App. 3d 136, that where given jury instructions do not require the State to prove all of the essential elements of the crime charged, including the disproving of a mitigating mental state, the resultant error is of constitutional dimension and should be retroactively applied. The court in *Brooks* relied on the retroactive test delineated in *People v. Erickson* (1987), 117 Ill. 2d 271. The *Erickson* court held that new constitutional rules set forth in judicial opinions will be applied retroactively when "(1) the case to which the new rule is to be applied was not final or was pending on direct review when the rule was declared and (2) the rule to be ap-

plied retroactively is of constitutional dimension." *Erickson*, 117 Ill. 2d at 289.

We briefly note that on February 1, 1989, the Illinois Supreme Court denied the State's petition for leave to appeal in *People v. Brooks* (1989), 124 Ill. 2d 557. Furthermore, the court in *People v. Flowers* (1989), 192 Ill. App. 3d 292, has held that the *Reddick* rule applies also to cases pending on collateral review. Inasmuch as our supreme court, by denying leave to appeal in the *Brooks* case, has tacitly approved retroactive application of the *Reddick* rule, at least to cases pending on direct review, it may be advantageous for personnel in the offices of the State's Attorney and the public defender to review their appellate caseloads and take appropriate action.

In conclusion, defendant's conviction for murder is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and COCCIA, JJ., concur.