THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
D'ARTHAGAN SARGENT, Defendant-Appellant.

First District (4th Division)   No. 1—87—3012

Opinion filed December 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Barbara McClure, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, D'Arthagan Sargent, was found guilty of murder. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).) He was sentenced to 80 years in the Illinois Department of Corrections.

On appeal, defendant raises the following issues: (1) whether a voluntary manslaughter instruction erroneously stated the burden of proof; (2) whether the trial court abused its discretion in allowing into evidence slides of the deceased as she appeared at the morgue; (3) whether a felony review memorandum and the testimony of an assistant State's Attorney concerning this memorandum were properly allowed into evidence; (4) whether the trial court erred in barring a witness from testifying as to defendant's general reputation; (5) whether the prejudicial impact of testimony concerning the 14-month-old daughter of the deceased outweighed the probative value of such evidence; and (6) whether the trial court erred in considering defendant's six prior arrests and a 1967 committal in sentencing him to 80 years of imprisonment.

We affirm.

The body of Rhonda Barnes was discovered on October 3, 1982, by her sister, Donna Johnson. The deceased's throat had been cut three times. She had also been strangled. Defendant was later charged with this murder. Subsequently, the trial court ordered defendant's arrest quashed and his confession suppressed. An expedited appeal followed. This court reversed the trial court's decision quashing defendant's arrest and suppressing his confession. (*People v. Sargent* (1985), 139 Ill. App. 3d 488.) A jury trial was then commenced on July 14, 1987.

At trial, the evidence established that defendant was employed as an emergency medical technician at the Chicago Rehabilitation Center. He met Rhonda Barnes while she was a patient at the facility. During this period, defendant was also employed by the Mid-America Red Cross. Although defendant shared an apartment with another woman, he maintained an intimate relationship with Rhonda.

Defendant and Rhonda dated from spring of 1980 to late fall of that year. Defendant did not see her again until April of 1982. When he saw Rhonda, he noticed that she had a child. The next time defendant saw Rhonda was on the evening of October 1, 1982, at her apartment. Defendant admitted that he had been drinking liquor earlier that evening. He stopped by Rhonda's apartment en route to the apartment which he shared with his girlfriend.

After conversing with Rhonda for a time, defendant asked her if she would be interested in having sexual intercourse with him. Ini-

tially, Rhonda declined, but then defendant offered her some financial assistance. Rhonda later agreed to having sex with defendant but did not want any money in exchange for the act.

After having sexual intercourse with defendant, Rhonda told him that she did need his financial assistance. He offered her $20, but, according to defendant, Rhonda demanded more money. Defendant then offered to write her a check, which she refused.

Failing at his attempts to pacify Rhonda, defendant decided to leave the apartment. As he started to walk toward the door, Rhonda managed to get in front of him and block his exit. She told defendant that "[he was] not going to be such a big shot if [his] job finds out that [he was] in prison." In fact, according to defendant, Rhonda told him that he would probably lose his job if the proper authorities found out about his past.

Defendant told her that he felt she would not tell the authorities and to let "bygones be bygones." When defendant again attempted to leave, Rhonda struck him on the ear. In return, defendant slapped her. The parties then began to argue. When defendant again attempted to leave, Rhonda tried to hit him. Defendant then pulled out his razor to frighten her. He was uncertain as to whether or not she saw the razor as she kept trying to slap him. Defendant then opened his razor, pulled Rhonda toward him and cut her. Rhonda fell to the floor and defendant fell on top of her. Defendant admitted that he lost control of his anger and cut her again. He then strangled her with a blouse that he found on the floor.

After strangling Rhonda, defendant took off her pants and attempted to clean up some of the blood. The bloodied clothes were later put into a bag and thrown away by defendant. Before leaving the apartment, defendant saw the deceased's 14-month-old child looking at him. Defendant then panicked and ran out of the apartment. The child was left alone in the apartment with her dead mother.

Donna Johnson, Rhonda's sister, testified that she attempted to reach her sister by telephone beginning October 1. On October 3, the child finally lifted the receiver but just cried into the phone. Donna immediately proceeded to Rhonda's apartment, where she found her sister's body. The child, who was caked with blood, was sitting on top of her mother's body. Donna then called the police.

On October 6, 1982, defendant's sister contacted defendant to inform him that the police were looking for him. Defendant called an officer of the police department that same day and agreed to cooperate with the investigation of the incident. Subsequently, defendant was taken to the police station and later confessed to this crime.

At the conclusion of the trial, the jury found defendant guilty of murder. It is from this decision that defendant appeals.

Defendant first contends that improper voluntary murder instructions directed the jury to convict him of murder and, in effect, removed a lesser offense, voluntary manslaughter, from their consideration. Defendant relies upon *People v. Reddick* (1988), 123 Ill. 2d 184, in which the Illinois Supreme Court held that when voluntary manslaughter instructions and murder instructions are both presented in a murder trial, an erroneous burden of proof is stated on the issues of whether defendant either acted under intense passion or an unreasonable belief that his action was justifiable.

In *Reddick*, the court stated:

"The voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the People must prove the existence of one of the alternative mitigating mental conditions which the People contend did not exist. By contrast, the murder instruction makes no mention of the mitigating mental condition. These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it will have been proved by defendant, not the People." *Reddick*, 123 Ill. 2d at 194-95.

The State contends that the alleged *Reddick* error was harmless as there was no evidence that defendant could have been guilty of manslaughter. The State also urges this court not to apply the *Reddick* rule retrospectively.

Defendant argues that a *Reddick* error may not be treated as harmless pursuant to *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129. We disagree; not all *Reddick* errors are reversible. *People v. Riggins* (1990), 205 Ill. App. 3d 904; *People v. Williams* (1989), 205 Ill. App. 3d 751; *People v. Carter* (1988), 177 Ill. App. 3d 593.

In *People v. Carter* (1988), 177 Ill. App. 3d 593, we held that the conviction need not be reversed as the *Reddick* error was harmless beyond a reasonable doubt. The defendant in *Carter* had not produced sufficient evidence to put the manslaughter defense at issue. (*Carter*, 177 Ill. App. 3d at 598-600.) According to the defendant, he killed his wife when, after earlier discovering her in bed with another man, she came toward him with a kitchen knife. The parties fought. The defendant eventually disarmed his wife and stabbed her repeatedly. Defendant claimed that the killing was justified as she initially came toward him armed with a knife and that the sight of her in bed with another man was sufficient provocation to warrant his behavior.

The court explained that the mental state required in manslaughter is like an affirmative defense. (*Carter*, 177 Ill. App. 3d at 598; *People v. Reddick* (1988), 123 Ill. 2d 184, 195-97.) When sufficient evidence of manslaughter is produced by the defense, the burden shifts to the State to disprove the mitigating mental conditions of voluntary manslaughter beyond a reasonable doubt. *Carter*, 177 Ill. App. 3d at 598-99; *Reddick*, 123 Ill. 2d at 197.

In *Carter*, the evidence showed that the defendant was 8 inches taller and 42 pounds heavier than the victim; the defendant stabbed the unarmed victim to death with a knife; there was no evidence, beyond the defendant's own testimony, to substantiate his manslaughter defense; the victim was stabbed four separate times; and the defendant did not sustain injuries as a result of his alleged struggle with the victim. The court found that this evidence was insufficient to support a manslaughter defense and, therefore, the *Reddick* error was harmless.

■ Similarly, in the instant case, the evidence established that defendant was physically larger than Rhonda; defendant was armed with a razor; Rhonda was unarmed; upon examination, it was found that defendant had no visible injuries as a result of his struggle with Rhonda; and other than defendant's testimony, there was no other evidence to support his version of the events. Further, defendant admitted that he strangled Rhonda after she had fallen to the floor and after he had severely and repeatedly slashed her throat with a razor. He strangled her only after he saw that she was still moving.

We do not find that Rhonda's verbal threats constitute sufficient provocation for murder nor do we find that, under the circumstances of this case, her alleged initial physical encounter with defendant constituted sufficient provocation for his actions. Therefore, the alleged error was harmless beyond a reasonable doubt.

We need not reach the retroactive application of the *Reddick* rule issue as we found the error to be harmless beyond a reasonable doubt. However, we note that in *People v. Flowers* (1990), 138 Ill. 2d 218, the Illinois Supreme Court held that *Reddick* may not be applied retroactively in collateral review cases. The instant case, however, was presented to this court on direct appeal. Arguably, *Reddick* may be applied retroactively in direct appeal cases. *People v. Riggins* (1990), 205 Ill. App. 3d 904.

Next, defendant argues that the trial court erred in admitting 11 slides of the deceased as she appeared at the morgue. The State maintains the slides were necessary and directly relevant to refute the defendant's self-defense theory. We agree.

■ Admission of photographs of the deceased into evidence is a question within the sound discretion of the trial court. (*People v. Walcher* (1969), 42 Ill. 2d 159, 164.) If the photographs have sufficient probative value of a fact in issue, they may be admitted even though gruesome and inflammatory. (*People v. Radford* (1978), 65 Ill. App. 3d 107, 113-14.) Photographs may be properly admitted into evidence where probative of a defendant's description of his "tussle" with the victim and his claim of self-defense. *People v. Cleveland* (1986), 140 Ill. App. 3d 462, 472.

■ We find that the trial court did not abuse its discretion in admitting the photographs of the deceased, where probative of the self-defense issue. As the State notes, the photographs were the only evidence available to refute defendant's claim of self-defense.

■ The next issue defendant raises is whether the trial court erred in allowing Assistant State's Attorney Ronald Riley to testify regarding his felony review memorandum. First, defendant argues that the assistant State's Attorney's references to and testimony from his felony review memorandum amounted to offering the jury his own personal belief in defendant's guilt. The testimony and memorandum, according to defendant, indicated that the assistant State's Attorney had approved of the murder charges against defendant. However, upon our review of the record and as the State argues, there is no testimony from the assistant State's Attorney that he approved of the murder charges.

Second, defendant argues that the trial court improperly admitted the felony review memorandum in question into evidence. However, as the State notes, the trial judge specifically ruled that the memorandum would not go to the jury. Defendant, therefore, was not prejudiced by the memorandum.

■ The fourth issue raised is whether the trial court committed reversible error in preventing one of defendant's co-workers from testifying about defendant's general reputation. The standard for determining whether an error is harmless or requires reversal is whether the alleged error is harmless beyond a reasonable doubt. (*People v. Glover-El* (1981), 102 Ill. App. 3d 535, 541.) An inconsequential error may be deemed as harmless; or, if the error is more serious, it may be found to be harmless when balanced against the strength of the State's evidence. *People v. Cooper* (1989), 188 Ill. App. 3d 971, 973.

In the instant case, Dan Plovanich worked with defendant for approximately one year at the American Red Cross. They went out after working on one occasion, and Plovanich dined at defendant's apartment once. Plovanich also testified that defendant had been a

guest at his wedding. When asked whether Plovanich talked about defendant's reputation in the community with anyone, he responded "not necessarily, no."

■ A defendant's character can only be proved by evidence of general reputation based upon the witness' contact with defendant's neighbors and associates. (*People v. Bascomb* (1979), 74 Ill. App. 3d 392, 394.) It may not be based upon that witness' personal opinion. (*People v. Moretti* (1955), 6 Ill. 2d 494, 523-24.) Plovanich admitted that he had not talked with anyone regarding defendant's general reputation. Under these circumstances, we do not find that the trial court erred in refusing to admit this aspect of Plovanich's testimony. Moreover, even if there was error, it was inconsequential in light of the overwhelming evidence against defendant. Therefore, the alleged error was harmless beyond a reasonable doubt. *People v. Cooper* (1989), 188 Ill. App. 3d 971, 973.

Defendant next argues that the repeated testimony concerning the deceased's 14-month-old child, Leslie Barnes, deprived him of a fair trial. Donna Johnson testified that when she went to the deceased's apartment, she found Leslie sitting on top of her mother's body. The child was caked with blood.

Chicago police officer Linnea Laskey testified that the child left a trail of bloody foot and hand prints about the apartment, including the telephone, cabinets and refrigerator. There was also testimony that one of the trails led to an overturned garbage pail from which the child had apparently been eating. This testimony, however, was stricken. Chicago police officer Alan Szudarski also testified that he found bloody trails about the apartment. He also noted that the apartment was hot and humid at the time the child was found.

Defendant objects to the State's inference that the child may have suffered physical injury. He argues that the prejudicial impact of such testimony denied him a fair trial. This is based upon speculation that the jury became distracted by this irrelevant evidence. The side issue of the child's ordeal, defendant argues, is tantamount to an additional crime which, in effect, created another issue for the jury to ponder.

■ Evidence should be excluded if the probative value of such evidence is outweighed by its prejudicial and inflammatory effect upon a jury. (*People v. Reimnitz* (1979), 72 Ill. App. 3d 761, 762-63.) However, the error in admitting such evidence will not warrant reversing the conviction if it is harmless beyond a reasonable doubt. (*People v. Glover-El* (1982), 102 Ill. App. 3d 535, 541.) The error in admitting certain evidence may be harmless if the evidence against defendant is overwhelming. *Glover-El*, 102 Ill. App. 3d at 541.

In the instant case, we find that the jury would not have rendered a different verdict had the testimony complained of not been entered into evidence. Moreover, we will not reverse defendant's conviction based upon speculation as to what might have been created in the jurors' minds concerning the child's condition.

Finally, defendant argues that the trial court erred in its consideration of defendant's six prior arrests for rape and a 1967 committal. However, as the State notes, defendant did not object at the sentencing hearing when the State advised the court of this information. It was only later in the proceeding that defendant objected to the State's argument on grounds that the rape victims suffered permanent psychological damage. The issue of the introduction of defendant's prior criminal history is, arguably, waived.

Moreover, "information which may have been irrelevant or extremely prejudicial on the question of guilt might be relevant and admissible in a sentencing hearing." (*People v. Free* (1983), 94 Ill. 2d 378, 426.) As we recently held in *People v. Eshaya* (1986), 144 Ill. App. 3d 757, 766, evidence of prior arrests which do not result in convictions may be admissible at the sentencing phase of a trial. Sentencing courts are allowed great discretion in the type of evidence to be considered in determining the extent of punishment to be imposed. *Eshaya,* 144 Ill. App. 3d at 766.

In light of the overwhelming evidence against defendant and the fact that defense counsel had referred to these alleged rape incidents at the sentencing hearing, we do not find that the trial court erred in its consideration of this prior misconduct.

For the foregoing reasons, the decision of the circuit court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

LINN and JIGANTI, JJ., concur.