(No. 68566.—
(No. 68603.—
(No. 68739.—
(No. 69054.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EDWARD SHIELDS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOZSEF FERCSI, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PRISCILLA EVANS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VINCENT THOMAS, Appellee.

*Opinion filed June 20, 1991.*

438

BILANDIC and HEIPLE, JJ., took no part.

CLARK, J., concurring in part and dissenting in part.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Kevin Sweeney, Joseph G. Howard, Renee Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Richard E. Gade, Stephanie L. Ellbogen and Mary C. Arundel, Assistant Defenders, of counsel), for appellees Edward Shields, Jozsef Fercsi and Vincent Thomas.

J. Kevin McCall and Susan L. Theiss, of Jenner & Block, of Chicago, for appellee Priscilla Evans.

CHIEF JUSTICE MILLER delivered the opinion of the court:

The defendants in these appeals were found guilty in the circuit court of Cook County of the offense of murder. Each case was pending on direct review when this court decided *People v. Reddick* (1988), 123 Ill. 2d 184. In *Reddick*, we found that the then-existing Illinois pattern jury instructions for murder and voluntary manslaughter were erroneous when given together. (*Reddick*, 123 Ill. 2d at 193-97; see Illinois Pattern Jury Instructions, Criminal, Nos. 7.02 (homicide), 7.04 (voluntary manslaughter—provocation), 7.06 (voluntary manslaughter—intentional—belief of justification) (2d ed. 1981) (IPI Criminal 2d).) In each of the present consolidated causes, the appellate court reversed the defendant's murder conviction and remanded for a new trial on the ground that the jury had been given instructions of the type found improper in *Reddick*. (*Shields*, 181 Ill. App. 3d 260; *Fercsi*, 182 Ill. App. 3d 13; *Evans*, 182 Ill. App. 3d 874; *Thomas*, 185 Ill. App. 3d 1050.) In each case we granted the State's petition for leave to appeal pursuant to Rule 315(a) (134 Ill. 2d R. 315(a)) and consolidated the actions for purposes of argument and disposition.

In cause No. 68566, the defendant, Edward Shields, was charged with the murder of Richard Benage. At the time of the offense, Shields was driving his taxicab in North Chicago when he and another driver began

shouting at one another. When the two drivers reached an intersection and stopped their cars, Benage, a passenger in the other driver's vehicle, approached Shields' taxicab. Shields and Benage argued briefly, and Shields shot Benage once, killing him. Shields testified that before the shooting Benage reached into the taxicab, tore Shields' shirt pocket, and tried to rob him. Shields also testified that he feared that the other driver was drunk and that he believed that Benage pointed a gun at him through the taxicab window. The jury was instructed both on murder and on the unreasonable belief form of voluntary manslaughter and found Shields guilty of murder.

In cause No. 68603, the defendant, Jozsef Fercsi, was charged with the murder of Tiberiu Paretei. At the time of the offense, Fercsi was drinking and watching television with his friends, Paretei and Robert Flowers. When Paretei made sexual comments about Flowers' daughter, Fercsi became angry and began arguing with Paretei. Flowers left the room. At trial, Fercsi testified that he hit Paretei on the head and in the stomach with a lead pipe and then continued to beat Paretei on the head with a hammer until Paretei was dead. Fercsi claimed that just prior to the killing, Paretei had kicked down the door to Fercsi's bedroom and threatened him with a knife. The jury was instructed both on murder and on the unreasonable belief form of voluntary manslaughter and found Fercsi guilty of murder.

In cause No. 68739, the defendant, Priscilla Evans, was charged with the murder of her husband, Joe Evans. At trial, Priscilla and the Evans children testified that they had suffered physical abuse from Joe for years. Evidence showed that Joe had ingested large amounts of alcohol, marijuana, and PCP throughout the day of the shooting. That evening, Joe had physically and verbally abused Priscilla. Just before the shooting,

Joe admitted raping Priscilla's daughter and said that he would do so again. As Joe stepped toward Priscilla, she shot him. The jury was instructed on murder and on both forms of voluntary manslaughter and found Priscilla guilty of murder.

In cause No. 69054, the defendant, Vincent Thomas, was charged with the murder of James Jones. The two men had engaged in three fistfights the evening before the shooting. The next day, Thomas saw Jones and Jones' friend Archie on the street. Thomas approached Jones and Archie and threatened to kill Jones. Thomas believed that Archie swung an object at him, and Thomas then shot at both Archie and Jones, killing Jones. The jury was instructed on murder and on both forms of voluntary manslaughter and found Thomas guilty of murder.

In these appeals, we must determine whether *Reddick* applies retroactively to the defendants and, if so, whether they are entitled to new trials. We hold that the *Reddick* decision applies retroactively to the instant appeals. With respect to defendants Shields and Evans, we conclude that the erroneous instructions constituted plain error, requiring reversal of their convictions. In the cases of defendants Fercsi and Thomas, we conclude that the erroneous instructions did not rise to the level of plain error but rather were harmless beyond a reasonable doubt. Accordingly, in cause No. 68566 and cause No. 68739, we affirm the judgments of the appellate court. In cause No. 68603, we reverse the judgment of the appellate court, affirm the judgment of the circuit court, and remand the cause to the appellate court for disposition of an additional issue previously raised but not addressed in that court. Finally, in cause No. 69054, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

### Retroactivity of *Reddick*

In *Reddick*, we held that the then-existing Illinois pattern jury instructions for murder and voluntary manslaughter, when given together, suffered from two related defects. The instructions incorrectly informed the jury that the State was required to prove the mental conditions that reduce murder to manslaughter when properly the State should have been required to disprove those circumstances. (*Reddick*, 123 Ill. 2d at 193-97.) Because of the defects in the jury instructions, the *Reddick* court reversed the defendants' murder convictions and remanded the consolidated causes for new trials. *Reddick*, 123 Ill. 2d at 199.

We must first determine whether the *Reddick* decision is of constitutional dimension, requiring its retroactive application to cases pending on direct review at the time *Reddick* was decided. The State argues that the proper test for determining the retroactivity of *Reddick* is found in *People v. Laws* (1981), 84 Ill. 2d 493. The State contends that the *Reddick* holding does not implicate constitutional rights and therefore, under *Laws,* *Reddick* does not apply retroactively.

This court has held that "retroactivity is triggered when two factors are present: (1) the case to which the new rule is to be applied was not final or was pending on direct review when the rule was declared and (2) the rule to be applied retroactively is of constitutional dimension." (*People v. Erickson* (1987), 117 Ill. 2d 271, 290 (adopting the retroactivity standard announced in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708).) Each of the cases before us was pending on direct review when this court decided *Reddick*. Therefore, if the *Reddick* decision is of constitutional dimension, it applies retroactively to these defendants.

The State contends that the *Reddick* decision implicates only statutory rights because the holding in that case was based in part on statutory construction. We acknowledge that in allocating the burdens of proof for the offenses of murder and voluntary manslaughter, the *Reddick* court relied on the affirmative defense provisions of section 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 3—2). However, we determined that the jury instructions were erroneous because, not only did they misstate the provisions of section 3—2, but also, as given, the instructions could deny a defendant a fair trial. (*People v. Flowers* (1990), 138 Ill. 2d 218, 240; see *Reddick*, 123 Ill. 2d at 198.) Indeed, the court in *Flowers*, which declined to apply *Reddick* to cases pending on collateral review when *Reddick* was decided, expressly acknowledged that *Reddick* implicated constitutional rights. *Flowers*, 138 Ill. 2d at 240.

A review of the errors identified in *Reddick* demonstrates that those defects may deny a defendant the constitutional right to due process. First, the murder and voluntary manslaughter instructions, when given together, misallocated the appropriate burdens of proof. Under the statutes in effect at that time, a defendant was guilty of voluntary manslaughter rather than murder if the defendant's actions were provoked by a sudden, intense passion due to serious provocation, or if the defendant believed, although unreasonably, that the use of force was justified to protect himself. (See Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a), 9—2.) The voluntary manslaughter instructions at issue in *Reddick* required the State to prove the existence of the extenuating mental states that reduce murder to voluntary manslaughter. (See IPI Criminal 2d Nos. 7.04, 7.06.) The court noted that the prosecution would normally have little incentive to introduce proof of that nature

and that the evidence would most likely have come from the defense, rather than the prosecution. In that event, a jury that literally followed the instructions would not be able to give effect to its finding. See *Reddick*, 123 Ill. 2d at 194-95.

The second defect identified in *Reddick* was that the murder instruction, when given with the voluntary manslaughter instruction, failed to require the State to disprove the circumstances that reduce murder to manslaughter. These mitigating factors are properly treated as affirmative defenses for purposes of allocating burdens of proof. (*Reddick*, 123 Ill. 2d at 195.) Illinois law requires the State to disprove beyond a reasonable doubt all of the defendant's sufficiently raised affirmative defenses other than insanity. (See Ill. Rev. Stat. 1985, ch. 38, par. 3—2.) Because the instructions failed to inform the jury that the State was required to disprove the existence of those mitigating mental states, the jury may have believed that it could convict the defendant of murder even if it found that the defendant was provoked by sudden and intense passion or that the defendant unreasonably believed that his actions were justified. *Reddick*, 123 Ill. 2d at 197; see also *United States ex rel. Fleming v. Huch* (7th Cir. 1991), 924 F.2d 679; *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129, 1136 (discussing *Reddick* defects; also noting that because the murder instruction is given first, it may take on special prominence in minds of jurors, encouraging them to consider voluntary manslaughter only if murder requirements have not been met).

Based on the deficiencies described above, we conclude that the use of the erroneous instructions may violate a defendant's due process right to a fair trial. See *Reddick*, 123 Ill. 2d at 198; *Rose v. Lane* (7th Cir. 1990), 910 F.2d 400, 402; *Falconer*, 905 F.2d at 1137; see also *Fleming*, 924 F.2d at 682 ("At oral argument,

the State basically (and wisely) conceded that, after *Falconer* and *Rose,* it cannot be disputed that the errors in these jury instructions constitute a violation of due process").

The State does not dispute that our decision in *People v. Erickson* (1987), 117 Ill. 2d 271, requires that a constitutional holding be applied retroactively to cases pending on direct review at the time the decision was announced. Because the holding in *Reddick* is of constitutional dimension, and because the appeals now before us were pending on direct review when *Reddick* was decided, the *Reddick* decision applies retroactively to the defendants in these cases. *Erickson,* 117 Ill. 2d at 289.

### Application of *Reddick*

Our conclusion that *Reddick* applies retroactively does not by itself dictate that the defendants' murder convictions be reversed. As a preliminary matter, we reject the defendants' contention that the *Reddick* court's description of the errors identified in that decision as "grave" (see *Reddick,* 123 Ill. 2d at 198) mandates automatic reversal of convictions arising from trials in which the defective jury instructions were used. *Reddick* itself counseled that the entire record must be examined in determining whether the jury was properly instructed. (*Reddick,* 123 Ill. 2d at 198.) Moreover, our subsequent decisions have recognized that the errors identified in *Reddick* may indeed be harmless in appropriate cases. See *People v. Austin* (1989), 133 Ill. 2d 118, 123-24; *People v. Harris* (1989), 132 Ill. 2d 366, 395.

Our refusal to adopt a rule of automatic reversal in this context is consistent with the standard principles informing appellate review of instructional error at trial. As a general matter, in determining the effect of

faulty jury instructions on the validity of a defendant's conviction, the instructions should not be judged in artificial isolation but must instead be considered in light of the record as a whole, including the evidence and arguments presented to the jury. (*Cupp v. Naughten* (1973), 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373, 94 S. Ct. 396, 400.) "Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." (*Cupp*, 414 U.S. at 147, 38 L. Ed. 2d at 373, 94 S. Ct. at 400.) Accordingly, we reject the defendants' contention that, under *Reddick*, reversal is invariably required in these circumstances.

In each of the present cases, the defendant failed to object to the jury instructions, to offer instructions that correctly stated the law, and to raise the issue in a post-trial motion. Generally, those procedural defaults will result in waiver of the alleged error for purposes of appeal. (*People v. Fierer* (1988), 124 Ill. 2d 176, 186; *Reddick*, 123 Ill. 2d at 198; *People v. Thurman* (1984), 104 Ill. 2d 326, 329.) The waiver rule is not absolute, however. On appeal, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a); see also 134 Ill. 2d R. 451(c) ("substantial defects [in jury instructions] are not waived by failure to make timely objections thereto if the interests of justice require").) The plain error doctrine is appropriately invoked when the evidence of guilt is closely balanced, or when the error denied the defendant a fair trial. *Thurman*, 104 Ill. 2d at 330; *People v. Carlson* (1980), 79 Ill. 2d 564, 575-77.

Constitutional errors may be deemed harmless if it can be shown that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386

U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828; *Fierer*, 124 Ill. 2d at 187.) Cases involving allegations of *Reddick* violations have used the *Chapman* harmless error test in determining whether retrial has been necessary in those instances. (See *People v. Harris* (1989), 132 Ill. 2d 366, 395; *People v. Green* (1991), 209 Ill. App. 3d 233, 240; *People v. Sargent* (1990), 207 Ill. App. 3d 631, 635-36.) We now apply these same principles of review to the particular circumstances of the four causes consolidated here.

In cause No. 68566, the jury found the defendant, Edward Shields, guilty of murder for the August 16, 1986, shooting death of Richard Benage. Shields was 51 years old and disabled: he had one wooden leg and could bend the other leg only 50 degrees. At the time of the offense, Shields was driving a taxicab and Benage was a passenger in an automobile being driven by Karen Goodiron. Goodiron's car was ahead of Shields' cab in the same lane of traffic. Goodiron and Shields had honked their car horns at one another several times and exchanged obscene gestures. When both automobiles were stopped at an intersection, Benage left Goodiron's car and approached Shields' taxicab. According to the parties' stipulation, Benage's blood-alcohol level at the time was 0.239%.

Goodiron testified that as Benage approached the taxicab, Shields bent down. Goodiron testified that she was looking away from the cab when she heard a gunshot. Another eyewitness, John Yun, testified that he saw Benage utter something and reach through the open window, and that Shields then leaned to his right. Yun also was looking away when the shot was fired. Both witnesses testified that Benage grabbed his chest after the shot was fired, and that Benage's hands were then empty.

Defendant Shields testified that the other vehicle had been straddling two lanes of traffic and that he feared that the driver was drunk. Shields testified that Benage approached the cab and threatened to kill him. Benage then grabbed Shields' shirt pocket, where the defendant kept money, and attempted to punch Shields in the eye. Shields testified that when he reached for his gun, he believed that Benage was pointing a gun at him as well. Shields testified that he "froze or panicked" for an instant and then fired one shot at Benage's shoulder.

The jury was instructed on murder and on the unreasonable belief form of voluntary manslaughter, and returned a verdict finding Shields guilty of murder. On appeal, Shields argued that the jury instructions used at his trial were defective under *Reddick*. The appellate court agreed, and, without considering whether the error was harmless under the circumstances of the case, reversed the defendant's murder conviction and remanded the cause for a new trial. *Shields*, 181 Ill. App. 3d at 265.

From our review of the record as a whole, we conclude that the use of the pattern jury instructions in this case constituted plain error. The evidence presented at trial was closely balanced. The defense offered extensive testimony in support of Shields' assertion that he believed, however unreasonably, that he was justified in shooting Benage. This evidence included Shields' fear that the driver of the other vehicle was intoxicated; his testimony that Benage threatened to kill him, reached into his cab, grabbed his shirt pocket, which contained dollar bills, and attempted to punch him; and his belief that Benage pointed a gun at him. Prosecution witnesses corroborated Shields' testimony that the victim reached into the cab. Although a weapon was never found, a properly instructed jury

might have concluded, in light of the defendant's physical disability and the other testimony presented at trial, that Shields feared for his safety and believed that use of force was necessary to prevent death or serious harm to himself. We cannot say beyond a reasonable doubt that the erroneous instructions did not affect the jury's deliberations. Accordingly, we affirm the judgment of the appellate court and remand the cause for a new trial.

In cause No. 68603, a jury convicted the defendant, Jozsef Fercsi, of murder for beating to death Tiberiu Paretei following an argument between the two men. At the time of the offense, Fercsi was drinking with Paretei and another man, Robert Flowers, in Flowers' room. Paretei made sexual comments about Flowers' daughter, and Fercsi and Paretei then began to argue. Flowers left the room and returned a short time later. Paretei was then lying on the floor outside of Flowers' room. Flowers testified that he saw Fercsi standing over Paretei, hitting him over the head with a hammer.

Defendant Fercsi testified that he had gone to his own room after Flowers left, that Paretei had kicked in the door to Fercsi's room, and that, in response, Fercsi hit Paretei first in the stomach and then on the head with a lead pipe. Fercsi testified that he then struck Paretei on the head several times with a hammer. Investigating officers did not discover any damage to Fercsi's door but found blood in the hallway leading to Flowers' room, where Paretei was lying.

The jury was instructed on murder and on the unreasonable belief form of voluntary manslaughter and found Fercsi guilty of murder. The appellate court agreed with Fercsi's contention that the jury instructions used at his trial were defective under *Reddick*. Without considering whether the error was harmless, the court reversed the defendant's murder conviction

and remanded the cause for a new trial. *Fercsi*, 182 Ill. App. 3d at 17.

From our examination of the record, we conclude that the error in this case did not constitute plain error but rather was harmless beyond a reasonable doubt. There is no evidence beyond Fercsi's own testimony to support his theory of the case, and the defendant's own testimony is discredited in large measure by his prior statements, as well as the physical evidence. Investigating officers found that Fercsi's door was undamaged, contrary to his testimony that the victim had kicked it in. At the time of his arrest, and in subsequent questioning, Fercsi admitted to the police that, in an effort to buttress his claim of self-defense, he placed a knife in the victim's hand after the victim was dead. Moreover, at trial Fercsi testified that after striking the victim in the stomach and over the head with a lead pipe, he crossed the room to his bag of tools and retrieved a hammer. Fercsi said that he then returned to the victim and resumed beating him on the head, then using the hammer.

On this record, we find that the evidence in support of the murder conviction is so clear and convincing that the jury's verdict would not have been different had correct instructions been used. (See *People v. Austin* (1989), 133 Ill. 2d 118, 124; see also *People v. Moore* (1983), 95 Ill. 2d 404, 410.) We therefore conclude that the *Reddick* error was harmless beyond a reasonable doubt and would not have affected the verdict. See *People v. Fierer* (1988), 124 Ill. 2d 176, 187.

In cause No. 68739, the jury found the defendant, Priscilla Evans, guilty of murder in the shooting death of her husband, Joe Evans. Priscilla and other witnesses testified that Joe had physically abused Priscilla and her children in the past and that Joe had verbally and physically abused Priscilla at a gathering the couple

had attended the evening of the killing. Evidence was presented indicating that Joe had ingested large amounts of alcohol, marijuana, and PCP throughout the day of the shooting. Witnesses testified that when Priscilla and Joe returned home, Joe smashed Priscilla's head into a brick wall outside the Evanses' home. Priscilla testified that inside the house, Joe used a meat cleaver to break into their bedroom and then put the cleaver away and verbally threatened her and two of her children. As Joe approached Priscilla, she shot him. Most of Priscilla's testimony was unrebutted by the State.

The trial judge instructed the jury on murder and on both the provocation and unreasonable belief forms of voluntary manslaughter. The jury found the defendant guilty of murder. The appellate court agreed with the defendant's contention that the instructions were erroneous under *Reddick*. Without determining whether the error could be harmless under the facts of the case, the court reversed Priscilla's murder conviction and remanded the cause for a new trial. *Evans*, 182 Ill. App. 3d at 878.

From our review of the record as a whole, we conclude that the erroneous instructions were not harmless beyond a reasonable doubt, but rather constituted plain error. The defendant presented extensive evidence in support of her assertions that Joe Evans provoked her to sudden and intense passion and that she believed that she was justified in shooting Joe. The evidence demonstrated that Joe had physically abused and threatened Priscilla, both in the past and immediately preceding the shooting. The physical evidence corroborated Priscilla's statement that Joe attempted to force open the bedroom door with a meat cleaver. The children testified that they had suffered many violent beatings from Joe over the years, and that on the night of

the shooting, the intensity of his rage surpassed any they had seen before. They testified that Joe moved toward their mother and motioned as if to hit her. Immediately before the shooting, Joe admitted raping one of the daughters and said that he would do so again. As Joe took a step toward Priscilla and threatened her, she fired the gun, killing him.

There was ample evidence from which a properly instructed jury could have concluded that Joe's physical assault upon Priscilla provoked her to shoot him or that Priscilla believed she needed to use force to defend herself, even if her belief was unreasonable. Because the evidence was closely balanced, we consider that the error could have affected the outcome of the trial. (See *People v. Thurman* (1984), 104 Ill. 2d 326, 330; *People v. Carlson* (1980), 79 Ill. 2d 564, 575-77.) We therefore affirm the judgment of the appellate court and remand the cause for a new trial.

In cause No. 69054, the jury found the defendant, Vincent Thomas, guilty of murder for the shooting death of James Jones. At trial, an eyewitness, Eric Archie, testified that he had broken up three fistfights between the defendant and Jones the evening before the shooting. Archie testified that on the day of the shooting, the defendant got out of a car and approached Archie and Jones as they stood near Jones' car. Archie testified that Jones asked the defendant if he had come back to finish the fight, and that the defendant replied, "No, I['ve] come to kill you." Jones stepped back, and the defendant then pulled a gun from his waistband and walked toward Archie, asking him where the "stuff" was. When Archie said that he did not know what the defendant was talking about, the defendant swung his gun at Archie's head, and the gun fired, hitting Archie in the foot. Archie testified that as he and Jones ran in

opposite directions, he heard two more shots being fired.

Another eyewitness, Felbert Morris, testified that when the defendant got out of Morris' car, the defendant asked, "What are you going to do now?" and walked up and swung at one of the two men, neither of whom Morris recognized. Morris testified that a shot was fired and he saw a gun in the defendant's hand, and that the defendant fired twice at the other men as they ran away.

At trial, defendant Thomas testified that while he was in Morris' car, Morris pointed out the two men who had jumped him the night before. Morris warned him that one of the men had then had a gun, and at Morris' urging the defendant took a gun from under the driver's seat. The defendant testified that he walked up to Archie and Jones, and that Archie swung at him with an object; the defendant could not tell what the object was. The defendant testified that he fell against a parked car, and his gun, which was pointing down, then went off. The defendant heard shots coming from Jones' direction, and he turned and shot back at Jones twice. Medical evidence showed that Jones suffered one bullet wound, through the center of his back. Police detectives did not find any evidence that Jones had a gun or any other weapon.

With respect to the Jones homicide, the jury received instructions on murder and on both the provocation and unreasonable belief forms of voluntary manslaughter. The jury found the defendant guilty of murder. The appellate court found that the instructions were erroneous under *Reddick* and, without considering whether the error was harmless, reversed the murder conviction. *Thomas*, 185 Ill. App. 3d at 1054.

Reviewing the record as a whole, we conclude that any error in the jury instructions was harmless beyond

a reasonable doubt. The record contains no evidence that either Archie or Jones threatened or injured the defendant. The only evidence suggesting that the victims may have been armed was the defendant's testimony that, before he fired at Archie, he believed Archie had swung an object at him. There was no other evidence that Archie swung an object at Thomas or that Jones shot at him. Jones was shot squarely in the back, indicating that Jones was fleeing from the defendant when the fatal shot was fired. In addition, other witnesses stated that they did not hear any more shots than the number the defendant admitted firing himself. By the same token, there was no evidence that the defendant was acting from a sudden and intense passion caused by the previous fight with Jones or in response to an unprovoked assault by Jones. See *People v. Thompson* (1977), 55 Ill. App. 3d 561, 563.

Our review of the record as a whole shows that the instructional error in this case was harmless beyond a reasonable doubt and that the incorrect instructions could not have affected the jury's verdict. (*People v. Fierer* (1988), 124 Ill. 2d 176, 187; *People v. Moore* (1983), 95 Ill. 2d 404, 410.) We believe that the evidence supporting Thomas' murder conviction was so clear and convincing that the jury's verdict would not have been different had proper instructions been given. (*People v. Austin* (1989), 133 Ill. 2d 118, 124; see also *People v. Moore* (1983), 95 Ill. 2d 404, 410.) Accordingly, we find that the use of the instructions in this case constituted only harmless error. We reverse the judgment of the appellate court and affirm the judgment of the circuit court.

For the reasons stated, we affirm the judgments of the appellate court in cause No. 68566 and cause No. 68739. In cause No. 68603, we reverse the judgment of the appellate court, affirm the judgment of the circuit

court, and remand the cause to the appellate court for disposition of a remaining issue not addressed in this appeal. Finally, in cause No. 69054, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

No. 68566—*Judgment affirmed.*
No. 68603—*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*
No. 68739—*Judgment affirmed.*
No. 69054—*Appellate court reversed;*
*circuit court affirmed.*

JUSTICES BILANDIC and HEIPLE took no part in the consideration or decision of this case.

JUSTICE CLARK, concurring in part and dissenting in part:

I must respectfully dissent because I believe the erroneous instructions given to the juries in cause Nos. 68603 and 69054 constituted plain error, requiring reversal of Fercsi's and Thomas' convictions. Accordingly, I would affirm the appellate court opinions in these causes.

The majority correctly rejects defendants' argument that our opinion in *Reddick* is to be understood as requiring reversal of those convictions arising from trials in which the defective jury instructions were used. (143 Ill. 2d at 445.) We concluded in *Reddick* that the defendants therein had not received a fair trial after finding that the juries had not been apprised of the prosecution's burden of proof. (*People v. Reddick* (1988), 123 Ill. 2d 184, 198.) Subsequent decisions, as noted by the majority, have affirmed the *Reddick* principle. See, *e.g., People v. Austin* (1989), 133 Ill. 2d 118, 124.

I do not disagree with the majority's conclusion that, rather than automatically reversing a conviction and remanding for a new trial where improper instructions on voluntary manslaughter and murder were given to the jury, the instructions should be considered "in light of the record as a whole, including the evidence and arguments presented to the jury." (143 Ill. 2d at 446.) However, I disagree with the majority's conclusions that the instructions in cause Nos. 68603 and 69054 were harmless error. In cause No. 68603, I cannot say beyond a reasonable doubt that the erroneous instructions did not affect the jury's deliberations. Flowers testified that Paretei precipitated the argument between Paretei and Fercsi by making sexual comments about Flowers' daughter. After Paretei and Fercsi began arguing, Flowers left his room and was not a witness to the ensuing events. Fercsi testified that he also left Flowers' room when Flowers left but Paretei followed him to his room and kicked in his door. Although the majority observes that the police did not discover any damage to Fercsi's door, they did find blood in the hallway "leading to Flowers' room" where Paretei's body was found. (143 Ill. 2d at 449.) The evidence of the trail of blood from Fercsi's room to Flowers' door supports Fercsi's testimony that Paretei pursued him into his room after Fersci and Flowers left Flowers' room. In light of Flowers' testimony that Paretei initiated the argument, and the physical evidence supporting Fercsi's testimony that Paretei pursued him into his room, I believe that a properly instructed jury may have concluded that Paretei feared for his safety and believed that use of force was necessary to prevent death or serious harm to himself.

In cause No. 69054, I believe there was sufficient evidence upon which a properly instructed jury could have concluded that Thomas believed that he needed to use

force to defend himself, even if his belief was unreasonable. Thomas testified that Morris pointed out Archie and Jones as the two drove in Morris' car and identified the two men as the ones who had "jumped" Thomas the night before. (143 Ill. 2d at 453.) Thomas testified that Morris told him that one of the two men was armed and urged him to take a gun he had hidden under the driver's seat. There was no evidence that Thomas sought out these men or knew their whereabouts before Morris identified them to him, nor was evidence presented that Thomas was armed prior to Morris giving him his gun.

Further, Archie testified that when Thomas approached the two men, Jones precipitated any contact among the men by asking Thomas if he had come back to "finish the fight." (143 Ill. 2d at 452.) The majority notes that no evidence was found that Jones had a gun "or any other weapon" (143 Ill. 2d at 453), although Thomas testified that *Archie* had swung at him with an unidentified object. There was no evidence presented that Archie was unarmed. In light of this evidence, as well as the history of violence among these men, I cannot say that a properly instructed jury could not have concluded that Thomas believed he needed to use force to defend himself, whether or not that belief was reasonable.