THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID B. PRUITT, Defendant-Appellant.

Fifth District    No. 5—90—0352

Opinion filed December 31, 1992.

Daniel M. Kirwan and Robert S. Burke, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, David B. Pruitt, appeals from a judgment order of the circuit court of Madison County dismissing his petition for post-conviction relief. In this cause, defendant raises two issues: (1) whether defendant's conviction for murder should be reversed and the cause remanded for a new trial because the jury instructions given on the issues in murder and voluntary manslaughter were improper, and (2) whether the court erred in denying defendant an evidentiary hearing on his post-conviction allegation that he was denied a fair and unbiased jury due to the prosecutor's alleged visit to the jury room during deliberations. We affirm.

Defendant petitioned this court for leave to supply us with recent case law developments. Defendant's petition was granted. Likewise,

the State was granted leave to file a response. We have considered defendant's additional authority along with the State's response.

Defendant was charged with murdering Bryan Keeney, a police officer with the Fairmont City police department. Keeney's body was found on November 4, 1984, lying on its back beside his squad car in Cahokia Mounds State Park (park). At defendant's jury trial, the evidence showed that defendant's wife, Sharon, was sexually involved with the victim. Defendant found his wife and the victim together in the park at approximately 3 a.m. Defendant had found the victim and his wife together approximately three weeks earlier at the same park. Defendant's theory of the case was that the shooting was an accident. Defendant's testimony at the time of trial was such that the victim had been shot accidentally by someone other than himself. The jury found defendant guilty of murder.

At the jury instruction conference, the State tendered Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981) (hereinafter IPI Criminal 2d), definition of murder, and IPI Criminal 2d No. 7.02, issues in murder. Defendant did not object to either instruction, and both IPI Criminal 2d Nos. 7.01 and 7.02 were given. Defendant tendered IPI Criminal definition instructions for voluntary manslaughter—sudden and intense passion (IPI Criminal 2d No. 7.04), and involuntary manslaughter (IPI Criminal 2d No. 7.07). Both were given.

Defendant appealed his conviction, at which time he was represented by the State Appellate Defender. We affirmed defendant's conviction on March 31, 1987. (See *People v. Pruitt* (1987), 154 Ill. App. 3d 22, 506 N.E.2d 696.) During his direct appeal, defendant failed to raise the issue of the adequacy of the jury instructions involved in murder and voluntary manslaughter. Defendant also failed to raise the issue of improper communications by the prosecutor with the jury during deliberations. Defendant filed a *pro se* petition for leave to appeal, which was ultimately denied. On May 15, 1986, defendant filed a *pro se* petition for post-conviction relief and requested counsel. On February 22, 1988, defendant's appointed post-conviction counsel entered his appearance.

On March 22, 1990, defense counsel moved to amend defendant's *pro se* post-conviction petition. The motion was granted. The amended petition asserted that defendant was denied effective assistance of counsel and was deprived of his constitutional right to a fair trial and due process of law for the following reasons: (1) ineffective assistance of counsel, (2) improper discovery, (3) prejudicial error in allowing the jury to view defendant in restraints, and (4) improper *ex parte* communication with the jury by the prosecuting attorney. Defense counsel

did not question the jury instructions for murder and manslaughter. On April 5, 1990, the State filed a motion to dismiss. On May 1, 1990, the trial court entered an order after a hearing was held on defendant's petition for post-conviction relief, the amended petition for post-conviction relief, and the State's motion to dismiss. The trial court found that there was no actual demonstrable incompetence by defense counsel and, even if there had been, defendant waived the error by not raising the incompetency of his trial counsel during his direct appeal. The trial court found there were no other errors as asserted by defendant and dismissed defendant's petition. Defendant filed a notice of appeal of the dismissal of his petition and counsel was appointed.

■ The first issue we are asked to consider is whether defendant's conviction for murder should be reversed and the cause remanded for a new trial because the jury instructions given on the issues in murder and voluntary manslaughter were improper. Defendant contends that he was denied effective assistance of counsel because his post-conviction counsel failed to recognize that direct appeal counsel was ineffective for not raising the issue of improper murder and voluntary manslaughter instructions given at trial. Our colleagues on the First District Appellate Court decided in *People v. Lowe* (1987), 152 Ill. App. 3d 508, 504 N.E.2d 955, while defendant's direct appeal was pending, that the Illinois murder and voluntary manslaughter instructions were improper. Our supreme court affirmed *Lowe, sub nom. People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, finding that the Illinois voluntary manslaughter instructions requiring the State to prove unreasonable belief in justification or intense passion were grave error. The *Reddick* court determined the instructions should have placed the burden upon the State to disprove the existence of either of these two states of mind. (123 Ill. 2d at 197, 526 N.E.2d at 146.) Defendant here contends that direct appeal counsel was ineffective for failing to raise the issues addressed in *Lowe*. The State responds that the decision in *Reddick* is not retroactive to cases pending on collateral review at the time *Reddick* was decided and, because the judgment order in the instant case was final before the ruling in *Reddick*, defendant's judgment should not be disturbed; thus, post-conviction counsel was not ineffective for failing to raise the issue of improper instructions. We agree.

■ Defendant raises the ineffective assistance claim rather than plain error because this is a post-conviction proceeding. Any claim which could have been presented on direct appeal, but was not, is thereafter barred under the doctrine of waiver and cannot be raised in a petition for post-conviction relief. (*People v. Del Vecchio* (1989),

129 Ill. 2d 265, 275, 544 N.E.2d 312, 317.) The instructional error in the instant case, according to defendant's argument, was apparent during defendant's direct appeal and could have been raised at that time. Since it was not, it is waived. There is an exception to the waiver rule in post-conviction proceedings. Where "fundamental fairness" so requires, a reviewing court will relax the waiver doctrine and review the alleged error. (*People v. Owens* (1989), 129 Ill. 2d 303, 317, 544 N.E.2d 276, 281.)

> "[T]o show that collateral review is required by fundamental fairness despite waiver of the error, a post-conviction petitioner must show cognizable 'cause' for his failure to raise the error and 'actual prejudice' flowing from the error. In order to show actual prejudice, a defendant must show that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. A defendant can show prejudice only if he shows, not simply that an error in instruction worked to his detriment, but that the result of the proceeding would have been different if proper instruction had been given." *People v. Yates* (1991), 223 Ill. App. 3d 110, 116, 584 N.E.2d 1059, 1063, citing *People v. Owens* (1989), 129 Ill. 2d 303, 318, 544 N.E.2d 276, 282.

■ Here, defendant has offered an explanation for his failure to raise the issue on direct appeal, namely, the ineffectiveness of his direct appeal counsel. Defendant farther contends that his post-conviction counsel was ineffective for failing to raise the *Reddick* issue. (See *People v. Yates* (1991), 223 Ill. App. 3d 110, 584 N.E.2d 1059 (where defendant failed to offer any "cause" or explanation for his failure to raise the *Reddick* issue on direct appeal, such as ineffective assistance of counsel, and thus waived the issue for purposes of post-conviction relief).) Because defendant has raised the *Reddick* issue at this time under a theory of ineffective assistance, we will consider defendant's contentions.

In *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, the Illinois Supreme Court held, on direct appeal from defendant's conviction, that the then-existing Illinois Pattern Jury Instructions for murder and voluntary manslaughter were erroneous when given together. (See IPI Criminal 2d No. 7.02 (homicide), No. 7.04 (voluntary manslaughter—provocation), and No. 7.06 (voluntary manslaughter—intentional—belief of justification).) Specifically, our supreme court held that if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge from murder to voluntary manslaughter, then to sustain the murder conviction, the State must

prove beyond a reasonable doubt that those defenses are meritless and must also prove beyond a reasonable doubt the statutory elements of murder. The *Reddick* court determined that the mitigating factors present in the offense of voluntary manslaughter are affirmative defenses which must be raised by the defendant, but rebutted beyond a reasonable doubt by the State. Therefore, it is the State that bears the burden of disproving, beyond a reasonable doubt, the existence of mitigating states of mind for voluntary manslaughter once they are raised by defendant. Because of the defects in the jury instructions, the *Reddick* court reversed the defendants' murder convictions and remanded the consolidated causes for new trials. *Reddick*, 123 Ill. 2d at 199, 526 N.E.2d at 149; see also *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129 (where the same murder and voluntary manslaughter instructions were found deficient).

■ The question of the retroactivity of *Reddick* has been raised in several cases in several different jurisdictions. For example, in *People v. Flowers* (1990), 138 Ill. 2d 218, 561 N.E.2d 674, the Illinois Supreme Court considered the issue whether *Reddick* would apply retroactively to a post-conviction proceeding. Our supreme court determined that *Reddick* set forth a new rule of law that will not be applied retroactively. (*Flowers*, 138 Ill. 2d at 237-42, 561 N.E.2d at 681-84.) The *Flowers* court relied on *Teague v. Lane* (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060, in making its determination. *Teague* concerns retroactive application of new constitutional rules and Federal *habeas corpus* proceedings. The *Flowers* court applied the *Teague* rule to post-conviction proceedings and determined that new rulings will not be applied in post-conviction proceedings unless the ruling was issued prior to completion of defendant's direct appeal or unless certain other exceptions are satisfied. Since *Reddick* was decided in 1988, and Flowers completed his direct appeal in 1983, the Illinois Supreme Court declined to apply *Reddick* retroactively. The *Flowers* court, in reaching this conclusion, also determined that the new rule set forth in *Reddick* did not fall under either of the two exceptions under the *Teague* analysis. Most notably, the rule set forth in *Reddick* did not fall under the second *Teague* exception, which states that a new rule may be applied on collateral review if it requires the observance of those procedures that are implicit in the concept of ordered liberty. (*Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073.) The *Flowers* court held that the new rule set forth in *Reddick* concerning the jury instructions for murder and manslaughter was not a component of basic due process and, therefore, did not

satisfy the exception of being a procedure implicit in the concept of ordered liberty. *Flowers*, 138 Ill. 2d at 241-42, 561 N.E.2d at 683-84.

After exhausting his State remedies, *Flowers* subsequently petitioned for Federal *habeas corpus* relief. Flowers was granted Federal *habeas corpus* relief in the form of a new trial by the district court. (See *United States ex rel. Flowers v. Illinois Department of Corrections* (N.D. Ill. 1991), 767 F. Supp. 880.) The district court's decision was affirmed by the Seventh Circuit Court of Appeals in *Flowers v. Illinois Department of Corrections* (7th Cir. 1992), 962 F.2d 703. A stay is now in place pending the Supreme Court's determination of whether to grant *certiorari*. Both the Federal district court and the court of appeals relied on *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129. The district court and court of appeals found that *Falconer*, in which the Illinois murder and voluntary manslaughter instructions were found to be statutorily deficient, did not announce a "new rule" under *Teague* and, thus, the defendant, Flowers, was entitled to its application and a new trial. The district court stated, in pertinent part:

> "The first component of the *Teague* analysis is to determine if a new rule was applied. Although respondent focuses exclusively on the question of whether *Reddick* announced a new rule, that is not the proper focus. *Reddick* principally relied on state law principles, whereas Flowers' claim in this court is a federal due process claim. The proper focus is on whether *Falconer* should be considered a new rule. *Falconer*, 905 F.2d at 1135, relied on *Cupp v. Naughten*, 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973), and *Clark v. Jago*, 676 F.2d 1099 (6th Cir.1982), *cert. denied*, 466 U.S. 977, 104 S. Ct. 2360, 80 L. Ed. 2d 832 (1984), both of which were decided prior to Flowers completing his direct appeal in 1983. While neither *Cupp* nor *Clark* concern Illinois's murder and voluntary manslaughter statutes, they do make clear that instructions on state law that misdirect, mislead, or confuse the jury can constitute violations of federal due process. *See also Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736, 52 L. Ed. 2d 203 (1977); *Tyler v. Phelps*, 643 F.2d 1095, 1100 (5th Cir.1981).
>
> These cases placed the state court on sufficient notice that the federal Constitution mandates jury instructions that do not so misdirect, mislead, or confuse the jury as to infect the entire trial. Finding the instructions given in this case to be consistent with *Cupp* and its progeny would not be a 'reasonable, good-faith interpretation[ ] of existing precedents made by a

state court[ ].' *Saffle v. Parks*, 494 U.S. 484, 110 S. Ct. 1257, 1260, 108 L. Ed. 2d 415 (1990) (quoting *Butler v. McKellar*, 494 U.S. 407, 110 S. Ct. 1212, 1217, 108 L. Ed. 2d 347 (1990)). Stated inversely, finding the instructions in this case to be misleading and confusing is 'compelled' by the precedents existing during the time Flowers' case was on direct appeal. *Saffle*, 110 S. Ct. at 1260. That this is true is supported by the fact that *Falconer* required relatively little discussion of whether the instructions in that case violated due process and no cases needed to be distinguished in reaching the conclusion that was reached. 905 F.2d at 1136. The more difficult question in *Falconer* was not the due process claim itself, but the question of whether there was a procedural default. Granting Flowers relief on his due process claim would not require application of a new rule of law." (767 F. Supp. at 894.)

The Seventh Circuit agreed with the district court's analysis and affirmed. *Flowers*, 962 F.2d at 705; see also *Taylor v. Gilmore* (7th Cir. 1992), 954 F.2d 441 (where it was determined that *Falconer* did not announce a new rule of law and thus defendants are entitled to its retroactive application).

Basically, the Federal courts have agreed with the *Reddick* decision handed down by the Illinois Supreme Court which found the previous Illinois murder and manslaughter instructions statutorily deficient, but they have gone further than *Reddick* and have found the error caused by the instructions used in the instant case so violative of the due process guarantees of the Constitution (U.S. Const., amends. V, XIV) that the jury verdict cannot stand and the cases must be remanded for a new trial. *E.g., United States ex rel. Fleming v. Huch* (7th Cir. 1991), 924 F.2d 679; *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129, 1136.

In *People v. Shields* (1991), 143 Ill. 2d 435, 575 N.E.2d 538, the Illinois Supreme Court stated that the statutory defects of the Illinois murder and manslaughter instructions identified in *Reddick* may, in fact, rise to the level of a due process violation:

"A review of the errors identified in *Reddick* demonstrates that those defects may deny a defendant the constitutional right to due process. First, the murder and voluntary manslaughter instructions, when given together, misallocated the appropriate burdens of proof. Under the statutes in effect at that time, a defendant was guilty of voluntary manslaughter rather than murder if the defendant's actions were provoked by a sudden, intense passion due to serious provocation, or if the

defendant believed, although unreasonably, that the use of force was justified to protect himself. (See Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a), 9—2.) The voluntary manslaughter instructions at issue in *Reddick* required the State to prove the existence of the extenuating mental states that reduce murder to voluntary manslaughter. (See IPI Criminal 2d Nos. 7.04, 7.06.) The court noted that the prosecution would normally have little incentive to introduce proof of that nature and that the evidence would most likely have come from the defense, rather than the prosecution. In that event, a jury that literally followed the instructions would not be able to give effect to its finding. See *Reddick*, 123 Ill. 2d at 194-95[, 526 N.E.2d at 145].

The second defect identified in *Reddick* was that the murder instruction, when given with the voluntary manslaughter instruction, failed to require the State to disprove the circumstances that reduce murder to manslaughter. These mitigating factors are properly treated as affirmative defenses for purposes of allocating burdens of proof. (*Reddick*, 123 Ill. 2d at 195[, 526 N.E.2d at 145].) Illinois law requires the State to disprove beyond a reasonable doubt all of the defendant's sufficiently raised affirmative defenses other than insanity. (See Ill. Rev. Stat. 1985, ch. 38, par. 3—2.) Because the instructions failed to inform the jury that the State was required to disprove the existence of those mitigating mental states, the jury may have believed that it could convict the defendant of murder even if it found that the defendant was provoked by sudden and intense passion or that the defendant unreasonably believed that his actions were justified. *Reddick*, 123 Ill. 2d at 197[, 526 N.E.2d at 146]; see also *United States ex rel. Fleming v. Huch* (7th Cir. 1991), 924 F.2d 679; *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129, 1136 (discussing *Reddick* defects; also noting that because the murder instruction is given first, it may take on special prominence in minds of jurors, encouraging them to consider voluntary manslaughter only if murder requirements have not been met).

Based on the deficiencies described above, we conclude that the use of the erroneous instructions may violate a defendant's due process right to a fair trial. See *Reddick*, 123 Ill. 2d at 198[, 526 N.E.2d at 147]; *Rose v. Lane* (7th Cir. 1990), 910 F.2d 400, 402; *Falconer*, 905 F.2d at 1137; see also *Fleming*, 924 F.2d at 682 ('At oral argument, the State basically (and wisely) conceded that, after *Falconer* and *Rose*, it cannot be disputed

that the errors in these jury instructions constitute a violation of due process').'' (*People v. Shields* (1991), 143 Ill. 2d 435, 443-45, 575 N.E.2d 538, 542.)

The *Shields* court declared: "Because the holding in *Reddick* is of constitutional dimension, and because the appeals now before us were pending on direct review when *Reddick* was decided, the *Reddick* decision applies retroactively to the defendants in these cases." 143 Ill. 2d at 445, 575 N.E.2d at 543.

■ The instant case is distinguishable, however, from *Shields*. Here, defendant's case was not pending on direct review when *Reddick* was decided. Defendant's direct appeal was final on March 31, 1987, while *Reddick* was not decided until June 20, 1988. Defendant relies on *People v. Lowe* (1987), 152 Ill. App. 3d 508, 504 N.E.2d 955, *aff'd sub nom. People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. *Lowe* was decided on February 19, 1987, by our colleagues on the First District Appellate Court. As a general proposition, we are obliged to follow decisions of our supreme court and of the United States Supreme Court. We are not required to follow decisions of appellate courts of other districts within Illinois. (*Roby v. Illinois Founders Insurance Co.* (1978), 57 Ill. App. 3d 89, 372 N.E.2d 1097.) Once our supreme court has declared the law on a point, it alone can overrule or modify its previous opinion. (*Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 896, 388 N.E.2d 906, 912.) It is not within our authority to overrule or modify decisions of our supreme court. (*People v. Jansen* (1990), 203 Ill. App. 3d 985, 561 N.E.2d 312; *People v. Glass* (1976), 41 Ill. App. 3d 43, 353 N.E.2d 214.) Pursuant to the doctrine of *stare decisis*, we follow our supreme court in *People v. Flowers* (1990), 138 Ill. 2d 218, 561 N.E.2d 674, which held that the *Reddick* decision will not apply retroactively to a post-conviction proceeding. Because defendant's direct appeal was complete before *Reddick* was decided, we are dealing with a case that involves the retroactivity of *Reddick* to a post-conviction proceeding rather than one pending on direct review. Consequently, the trial court properly dismissed defendant's post-conviction petition, which argued that *Reddick* required reversal of his murder conviction.

The second issue we are asked to consider is whether the trial court erred in denying defendant an evidentiary hearing on his post-conviction allegation that he was denied a fair and unbiased jury due to the prosecutor's alleged visit to the jury room during deliberations.

■ The record shows that this is the first time defendant has raised the claim that he was denied his right to a fair and unbiased jury due to the prosecutor's alleged visit to the jury room during de-

liberations. Issues that could have been presented on direct appeal, but were not, are deemed waived. (*People v. Owens* (1989), 129 Ill. 2d 303, 315, 544 N.E.2d 276, 281; *People v. Gaines* (1984), 105 Ill. 2d 79, 85, 473 N.E.2d 868, 873.) Defendant had the opportunity to raise this issue by post-trial motion and on direct appeal but failed to do so. Thus, he is barred from raising this issue during this appeal. As previously stated, the one exception to the waiver rule is that where fundamental fairness requires, the waiver rule will not be applied in post-conviction proceedings. (*Owens*, 129 Ill. 2d at 316, 544 N.E.2d at 281.) In order to meet the requirements of fundamental fairness, a defendant must show cognizable cause for his failure to make a timely objection and actual prejudice flowing from the complained-of error. (*Owens*, 129 Ill. 2d at 317, 544 N.E.2d at 281-82.) In order to demonstrate prejudice, a defendant must show not only that the error occurred but that the result would have been different had the error not occurred. (*Owens*, 129 Ill. 2d at 317-18, 544 N.E.2d at 282.) Applying that standard here, defendant has failed to convince us that the outcome would have been different had the issue been previously raised.

Assuming the prosecutor did take three sodas to the jurors during their deliberations, there was nothing in the form of affidavits to show that the jurors were influenced by this act or that their determination as to defendant's guilt would have been different had they not received sodas from the prosecutor. Defendant needed to present more than the affidavits of his children saying that the prosecutor had taken drinks into the jury deliberation room. Without the affidavit of a juror saying that he had been swayed by the prosecutor's conduct in this regard, there is no showing of constitutional deprivation and defendant fails to meet the fundamental fairness test.

The evidence of defendant's guilt was more than sufficient to support the jury's verdict. Fundamental fairness does not require us to review defendant's claim further. We find that defendant has waived the issue of whether he was denied a fair and unbiased jury due to the prosecutor's alleged visit to the jury room during deliberations.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

CHAPMAN, P.J., and WELCH, J., concur.