**UNITED STATES of America ex rel. Jimmy Lee RIGGINS, Petitioner,**

v.

**Kenneth R. McGINNIS and Roland Burris, the Attorney General of the State of Illinois, Respondents.**

**No. 91 C 1351.**

United States District Court, N.D. Illinois, Eastern Division.

July 28, 1994.

310

Jerry B. Kurz, Hall & Kurz, Richard A. Halprin, Kent R. Carlson, Chicago, IL, for plaintiff.

Margaret Mary O'Connell, DuPage County States Attorney's Office, Wheaton, IL, for Kenneth R. McGinnis.

Michael A. Hurst, Kathryn Marie Frost, Illinois Atty. General's Office, Chicago, IL, for Roland Burris.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the petition of Jimmy Lee Riggins ("Riggins") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition is denied.

### FACTS [1]

On June 30, 1986, Riggins went to Jackson Park Hospital for a kidney dialysis treatment. After the treatment, he went directly to his house. Riggins felt weak and woozy, but later that evening he decided to visit a local lounge, the Black Marble Lounge ("BML"). Upon arriving at BML, he engaged in a conversation with the decedent,

---

1. The following facts are drawn from the Illinois Appellate Court's opinion, as modified after rehearing on October 26, 1990, in *People v. Riggins*, 205 Ill.App.3d 904, 151 Ill.Dec. 145, 564 N.E.2d 122 (1990), *appeal denied*, 136 Ill.2d 552, 153 Ill.Dec. 381, 567 N.E.2d 339 (1991), and are given the presumption of correctness required under 28 U.S.C. § 2254(d). *See also Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Lord v. Duckworth*, 29 F.3d 1216, 1219 (7th Cir.1994) ("We presume the state court's findings of historical facts to be correct unless not fairly supported by the record...").

Kevin Williams ("Williams"). Williams was acquainted with Riggins. Both had spent a considerable amount of time together before that evening.

During their conversation, Williams began to make derogatory comments about the female population. Williams, however, did not limit his verbal assault to women in general. He began calling his own mother, and Riggins' wife, and Riggins' mother certain unflattering names. Naturally, Riggins did not appreciate the comments and told Williams that Riggins had nothing to do with the way women were and that Williams should not talk about Riggins' wife and mother in that way. A few minutes later, he decided to leave BML to avoid further conflict with Williams.

As Riggins reached for the door to leave BML, Williams grabbed Riggins and slammed his head against the concrete/marble pillar adjacent to the entrance. Riggins feared that the surgical implants in his arm might be torn out by Williams' attack. After slamming Riggins' head into the pillar, Williams then applied a choke-hold on Riggins. Riggins knew that the hold was not strong enough to choke him to death and that Williams was unarmed. But, Riggins knew that Williams had a reputation for causing trouble in BML and that Williams had stabbed other people. Fearing that Williams was going to kill him, Riggins pulled a folding knife from his pocket while Williams held him in the choke-hold. He then opened the knife with one hand and stabbed Williams one time.

Following the stabbing, the altercation between Williams and Riggins ended. Riggins quickly entered his vehicle and drove to an acquaintance's house. Several hours later, Riggins returned to his vehicle and drove away. During this drive, Chicago Police Officer David Cristovic ("arresting officer") followed Riggins and eventually placed him under arrest for the murder of Williams. At the time of the arrest, Riggins exclaimed, "Oh, man, the guy died?"

The above factual account, delivered by Riggins at his trial was, however, largely contradicted by other eye-witnesses to the stabbing. On the night in question, Cortez Mack ("Mack") was working the bar at BML. At approximately 9:00 p.m., Mack observed Riggins come into the establishment. At about the same time he saw Williams inside the bar. Contrary to Riggins' account of the events inside BML, Mack did not see Riggins and Williams argue, or see Williams provoke an argument or physically attack Riggins.

Another witness for the prosecution, Vinckley Harris ("Harris"), was inside BML at the time of the stabbing. Harris did observe Riggins and Williams engage in what appeared to him as a mild argument inside BML. As Harris walked towards the entrance, he overheard Riggins warn Williams that Williams ought to stop talking to him. He did not hear Williams say anything in response. When Harris reached the doorway, he exited and stood on the corner near BML.

As Harris was standing, he heard a door smashing against a building. Instinctively, he turned toward the noise. As he turned, Harris observed Williams coming out the doorway of BML backwards. Harris further observed Riggins facing Williams and coming out after him. Riggins followed Williams to a grassy area where Williams collapsed. While Williams was on the ground, Riggins raised his knife and attempted to stab Williams. To avoid being stabbed, Williams began kicking his legs and flailing his arms. As Riggins stood directly over Williams with his raised knife, another eye-witness John Jones ("Jones") shouted at Riggins to stop, causing him to retreat.

In addition, the prosecution elicited testimony from Riggins that at the time of the stabbing, he was on probation for the crime of possession of a controlled substance with the intent to deliver. Further, the arresting officer and various medical personnel testified that there was no visible sign of a head injury when Riggins was arrested.

At the conclusion of Riggins' trial, the jury found him guilty of murder and armed violence. Subsequently, the Circuit Court of Cook County, Illinois, sentenced him to twenty-five years in prison. Riggins attacks the conviction and requests habeas corpus relief under 28 U.S.C. § 2254. In support of his

habeas petition, he presents three arguments: (1) that he was denied effective assistance of counsel; (2) that the counsel for the prosecution made improper remarks during his closing argument; and (3) that the trial court's jury instructions on murder and voluntary manslaughter denied him due process of law guaranteed by the Fourteenth Amendment. The court will address each of Riggins' arguments respectively.

## DISCUSSION

■ ·Before the court may reach the merits of a petition for a writ of habeas corpus, it must first ascertain whether the petitioner has met two distinct procedural requirements. *Jones v. Washington,* 15 F.3d 671, 674 (7th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 (U.S. 1994). The first requirement is that of exhaustion. 28 U.S.C. § 2254(b); *Harris v. Champion,* 15 F.3d 1538, 1554 (10th Cir. 1994). Under this requirement, the petitioner must exhaust all possible state remedies before he or she may file a petition for a writ of habeas corpus. *Id.*

■ The second requirement is that of fair presentment of constitutional issues. *Jones,* 15 F.3d at 674. Under this requirement, the petitioner must have raised the claims made in his petition in the state court proceedings. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). This prerequisite to federal habeas review is designed to preserve the balance of the dual system of government by providing the state courts the first opportunity to remedy a constitutional violation. *Duckworth v. Serrano,* 454 U.S. 1, 4, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981). Failure to satisfy both requirements results in procedural default and denial of the petition. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989).

■ Riggins claims that at the time of his criminal trial for the charges of murder and armed violence, he was denied effective assistance of counsel. In support, he states that at trial the arresting officer testified that he recovered a driver's license from Riggins with his name on it. Riggins informed his trial attorneys that the arresting officer was lying on the stand because he did not have a license at the time of the arrest. Riggins further explained that he was driving while on probation for driving with a revoked license. Given this information, Riggins charges that his attorneys should have cross examined the arresting officer in order to impeach him.

Riggins' ineffective assistance of counsel claim, however, is procedurally defective and, thus, it must fail. Respondents Kenneth R. McGinnis and Roland Burris, the Attorney General of the State of Illinois (collectively "government") point out that Riggins never raised the ineffective assistance of counsel claim in the state appellate proceeding. Riggins raised the following issues on direct appeal to the Illinois Appellate Court: (1) whether the trial court erred in denying Riggins' motion for directed verdict after the closing of the government's case in chief; (2) whether the jury instructions on murder and voluntary manslaughter misallocated the prosecution's burden of disproving the existence of a mitigating mental state; and (3) whether the court erred in permitting the government to impeach Riggins on matters collateral to the substantive issues in the trial and matters outside the scope of his direct examination. *People v. Riggins,* 205 Ill. App.3d 904, 151 Ill.Dec. 145, 148, 150–51, 564 N.E.2d 122, 125, 127–28 (1990), *appeal denied,* 136 Ill.2d 552, 153 Ill.Dec. 381, 567 N.E.2d 339 (1991). Indeed, Riggins failed to raise the claim of ineffective assistance of counsel on direct appeal. In addition, he does not argue otherwise. Thus, Riggins' claim of ineffective assistance of counsel is barred by a procedural default.

Riggins next claims that because of prosecutorial misconduct he was denied due process when the prosecutor called him a "dope dealer" during closing argument. This claim, like the ineffective assistance claim, is barred by the procedural default. He did not raise the issue on direct appeal. In his habeas petition, however, Riggins explains that the prosecutorial misconduct issue was not presented on direct appeal because his attorneys believed that it was at best a harmless error.

■ To demonstrate cause for a procedural default, "the prisoner [must] show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). The standard requires more than a mere showing that the prisoner did not deliberately abandon or intentionally exclude the claim from earlier proceedings. *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991). The analysis focuses on the conduct of the prisoner to determine whether he has a legitimate excuse for failing to assert the claim on direct appeal. *Id.* After the prisoner establishes cause, he must then show actual prejudice resulting from the cause. *Id.* Show of one factor without the other is inadequate to escape the procedural bar. *Id.* at 501, 111 S.Ct. at 1474.

■ Riggins' appellate strategy, however, is not an external factor which impeded his counsel from raising the issue. To the contrary, Riggins' counsel at the time of his direct appeal deliberately abandoned the issue. *See generally Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. Therefore, the prosecutorial misconduct claim is barred by the procedural default.

Lastly, Riggins contends that the trial court violated his constitutional right to due process when it gave the Illinois Pattern Jury Instructions ("IPI") 7.02[2] on murder and 7.04[3] voluntary manslaughter in that order. Unlike the other two claims Riggins asserts in his § 2254 petition, the Illinois Appellate Court did consider his challenge to the jury instructions on direct appeal. *See Riggins*, 151 Ill.Dec. at 150, 564 N.E.2d at 127. Riggins contended that the IPIs given to the jury at his trial misallocated the State of Illinois' ("State") burden to disprove the existence of a mitigating mental state in violation of *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988).

The Illinois Appellate Court agreed with Riggins that giving of the subject IPI to the jury at his trial was an error pursuant to *Reddick*. Nonetheless, the Illinois Appellate Court concluded that reversal of the conviction was not required under Illinois law because the erroneous instructions amounted to nothing more than a harmless error. In reaching this conclusion, the Illinois Appellate Court emphasized the strength of the State's evidence against Riggins and against the claim of self-defense:

> We believe that the record, when viewed as a whole, demonstrates that defendant

2. IPI 7.02 provides the following:
   To sustain the charge of murder, the State must prove the following propositions: *First:* That the defendant performed the acts which caused the death of ___; and *Second:* That when the defendant did so, [1] he intended to kill or do great bodily harm to ___; or [2] he knew that his act would cause death or great bodily harm to ___; or [3] he knew that his acts created a strong probability of death or great bodily harm to ___; or [4] he [(was attempting to commit) (was committing)] the offense of ___. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.
   Illinois Pattern Jury Instructions, Criminal 2d No. 7.02 (2d ed. 1981) (emphasis and brackets in original).

3. IPI 7.04 provides the following:
   To sustain the charge of voluntary manslaughter, the State must prove the following proposi-

tions: *First:* That the defendant performed the acts which caused the death of ___; and *Second:* That when the defendant did so, [1] he intended to kill or do great bodily harm to ___; or [2] he knew that his act would cause death or great bodily harm to ___; or [3] he knew that his acts created a strong probability of death or great bodily harm to ___; and *Third:* That when the defendant did so, [1] he acted under a sudden and intense passion resulting from serious provocation by another; or [2] he acted under a sudden and intense passion resulting from serious provocation by some other person he endeavored to kill, but he negligently or accidentally killed ___. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.
Illinois Pattern Jury Instructions, Criminal 2d No. 7.04 (2d ed. 1981) (emphasis and brackets in original).

could not have feared for his life, not even unreasonably. Defendant failed to produce sufficient evidence to prove that he either reasonably or unreasonably believed that he was in danger and therefore, has failed to demonstrate the mitigating mental condition of voluntary manslaughter required to shift the burden of disproving his belief to the State.

*Id.,* 151 Ill.Dec. at 151, 564 N.E.2d at 128. In like fashion, the government argues that the error associated with instructing the jury as the trial court had done does not warrant a habeas relief because it was a harmless error. Citing *People v. Shields,* 143 Ill.2d 435, 159 Ill.Dec. 40, 575 N.E.2d 538 (1991), the government urges this court to view the entire record to determine whether it demonstrates that the error was harmless beyond a reasonable doubt. Riggins responds that the jury instructions employed in his case were inherently prejudicial and, therefore, requires the court to grant habeas relief under *Falconer v. Lane,* 905 F.2d 1129 (7th Cir. 1990), and its progeny.

At first glance, the record appears to indicate that Riggins' federal constitutional challenge to the jury instructions was properly presented to the Illinois Appellate Court. Even the government does not contest that the jury instruction issue is properly preserved for a federal habeas review. On a closer examination, however, this is not so. The fatal mistake in Riggins' approach is equating the *Reddick* claim to the *Falconer* claim to arrive at the conclusion that the *Reddick* claim raised on direct appeal is a federal constitutional question. The mistake is certainly understandable given the confusion created by the Seventh Circuit with respect to the characterization of *Reddick* problem as one of constitutional dimension. *Taylor v. Gilmore,* 954 F.2d 441, 448 (7th Cir.1992), *reversed on other grounds,* — U.S. ——, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). The *Taylor* court stated that:

By stating [that *Reddick* was grounded solely on Illinois criminal law] we do not mean to imply that the precise nature of *Reddick* ... was always free from doubt, or even that we had no hand in creating this doubt. In *Rose v. Lane,* 910 F.2d 400,

401 n. 1 (7th Cir.1990), for example, we suggested that *Reddick* "creates a federal claim through *In re Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ]...." While we subsequently characterized this statement as "somewhat unartful shorthand," *Fleming v. Huch,* 924 F.2d 679, 683 (7th Cir.1991), some of our cases may have left the lingering impression that we still believed there was some federal constitutional content in *Reddick.*

*Id.* The prevailing Seventh Circuit view of *Reddick* is that it has no foundation in federal due process principles and that *Falconer* is inapposite to *Reddick. Id.* at 449.

While the *Reddick* and *Falconer* courts condemned the identical jury instructions, IPI 7.02 and 7.04, they grappled with distinguishable defects. In *Reddick,* the defect was the imposition of the burden of proving the mitigating mental state on the defendant. *Verdin v. O'Leary,* 972 F.2d 1467, 1470 (7th Cir.1992). In *Falconer,* the problem "was that the jury instructions permitted the jury to find the defendant guilty of murder even if it found one of the mitigating mental states." *Mason v. Gramley,* 9 F.3d 1345, 1352 (7th Cir.1993).

██ The distinction between a *Reddick* problem and a *Falconer* problem is critical for purposes of a federal habeas review. Riggins claimed on direct appeal that the jury instruction given at his trial misallocated the burden of disproving the mitigating mental state at his trial in violation of *Reddick.* This burden-shifting defect violates the Illinois Criminal Code, but it is not cognizable on habeas review. *Verdin,* 972 F.2d at 1476. *Reddick* is controlled solely by the Illinois Criminal Code and "does not rest upon federal due process principles[.]" *Taylor,* 954 F.2d at 449. If the state courts resolved an issue, as the Illinois Appellate Court did in this case, on independent and adequate state law grounds, it is not subject to collateral review. *Del Vecchio v. Illinois Dept. of Corrections,* 31 F.3d 1363, 1380–1381 (7th Cir. 1994). Federal courts are forbidden from granting habeas relief on the basis that a state court erred under state law. *Estelle v. McGuire,* 502 U.S. 62, ——, 112 S.Ct. 475,

480, 116 L.Ed.2d 385 (1991). "[Riggins] consequently cannot reap the benefit of *Reddick* on collateral review, for [the court] may not grant habeas relief to remedy an error of state law." *Taylor,* 954 F.2d at 449.

■ Now, the remaining question for the court is whether the record demonstrates that Riggins fairly presented a *Falconer*-like constitutional claim during the state proceedings. To this question, the answer must be "no." "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted to that court." *Verdin,* 972 F.2d at 1474. Both elements must exist at the time of the state court proceedings to preserve the constitutional issue for a federal habeas review. *Id.* It is not enough to raise a state law claim that is similar to a recognized federal law claim. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). The petitioner must have sufficiently identified the constitutional claim inherent in the operative facts alerting the appellate court to the federal constitutional question. *Id.; see also Verdin,* 972 F.2d at 1474 n. 9.

In the case at bar, there is no indication in the appellate record that Riggins fairly presented a federal constitutional challenge to the subject IPIs. His challenge to IPI 7.02 and 7.04 was limited to the argument that those jury instructions misallocated the burden of disproving the mitigating mental states in violation of *Reddick.* An examination of Riggins' appellate brief discloses that the thrust of his argument for a new trial was the *Reddick* decision and the improper shifting of the applicable burden of proof. Furthermore, devoting five pages of his appellate brief to challenging the jury instructions, Riggins cited only state cases which were decided before the *Falconer* decision.

Additionally, the Illinois Appellate Court rejected Riggins' jury instruction challenge without relying on or referring to federal constitutional provisions or analysis. The Illinois Appellate Court recognized the *Reddick* problem in Riggins' trial, but applying state law, it held that the *Reddick* error was harmless beyond a reasonable doubt under the facts of this case:

> Such a combination of instructions, if followed by a jury, eliminates the possibility of a defendant being convicted of voluntary manslaughter as the only way a mitigating mental state can be proved is by the defendant, rather than by the State. Nonetheless, an erroneous instruction is harmless if the result of the trial could have been the same had the proper instruction been given.

*Riggins,* 151 Ill.Dec. at 150, 564 N.E.2d at 127. In support of this proposition, the Illinois Appellate Court discussed and relied on *People v. Carter,* 177 Ill.App.3d 593, 126 Ill. Dec. 846, 532 N.E.2d 531 (1988), and *People v. Williams,* 205 Ill.App.3d 751, 150 Ill.Dec. 635, 563 N.E.2d 762 (1989). *Id.* 151 Ill.Dec. at 150–51, 564 N.E.2d at 127–28 ("We find the present case to be similar to *Carter* and *Williams* in that the evidence of the defendant's alleged belief in self-defense was contradicted by three witnesses who were present.").

Moreover, the Illinois Appellate Court's opinion does not demonstrate that the appellate court *sua sponte* recognized or raised the federal constitutional issue discussed in *Falconer.* The *Riggins* court did mention the *Falconer* decision, but in the context of distinguishing this case to the facts of *Falconer* and only as a parenthetical explanation.[4] Therefore, a mere citation to the *Falconer* case by the appellate court is not enough to conclude that a federal constitutional challenge to the jury instructions was

---

**4.** With respect to the *Falconer* decision, the appellate court cited the case in the following context:

> Thus, any error engendered by the erroneous instructions was harmless beyond a reasonable doubt. (See *People v. Skipper* [ (1988) 177 Ill. App.3d 684, 127 Ill.Dec. 426, 533 N.E.2d 44]; *People v. Carter; Cf. Falconer v. Lane,* (7th Cir.1990), 905 F.2d 1129.) (erroneous *Reddick*

instructions were not harmless because although the record showed that the jury could rationally have rejected the defendant's theory of self-defense, the record did not demonstrate that "the jury could not have reasonably found that the killing was the result of provocation or unreasonable belief of justification.")

*Riggins,* 151 Ill.Dec. at 151, 564 N.E.2d at 128.

properly presented or considered by the state court.

■ The record reveals that after the Illinois Appellate Court affirmed the conviction, Riggins raised the *Falconer*-like argument, in addition to the misallocation of burden of proof, in his petition for leave to file an appeal to the Supreme Court of Illinois. Raising a constitutional claim for the first time in a petition for a discretionary review, however, does not constitute fair presentment. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *see also Cruz v. Warden of Dwight Correctional Center,* 907 F.2d 665, 669 (7th Cir. 1990). Thus, the court finds that Riggins failed to fairly present his federal due process argument to the state court, and as a result, he is prohibited from raising such claim in this petition.

## CONCLUSION

For the foregoing reasons, Riggins' petition for habeas corpus relief is denied.

IT IS SO ORDERED.